ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
| ,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Otha Curtis Nelson, Sr., an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Count I — The Aucoin Matter
The following facts are not in dispute, having been stipulated to by the parties:
On July 15, 2000, respondent issued a check from his trust account in the amount of $250, made payable to Tina Aucoin on behalf of his client Karen Aucoin. Tina attempted to cash the check on July 19, 2000 but was informed by the bank that the check would not clear. However, Tina was able to cash the check on July 25, 2000.
The funds would not clear respondent’s trust account because he failed to reconcile the account during this time. He also improperly maintained his personal funds in the trust account during this time.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons) and 8.4(a) (violation of the Rules of Professional Conduct).
| zCount II — The Matthews Succession Matter
Beulah Holmes hired respondent to handle the succession of her mother, Fannie Matthews. At the time of probate, Ms. Matthews’ estate was valued at $50,736.12. Respondent billed the succession $21,576.75, or 43% of the value of the estate, for his services; of that amount, in June 2000, he collected $14,276.93, or approximately 28% of the value of the estate. He then attempted to secure real property owned by the estate as further payment of his billed fee, and did so without advising the owners of the property to obtain an independent legal opinion.
In the estate items, respondent included United States savings bonds payable to certain relatives of Ms. Matthews even though the savings bonds were not properly part of the estate. In an attempt to ensure his fee was paid, respondent intentionally held the savings bonds in his possession from June 2000 until February 2002 (approximately twenty months) even though they constituted property of third persons. He also attempted to collect a fee for cashing the savings bonds in the *178 amount of 25% of the face value of the bonds. However, respondent’s services were not necessary because the savings bonds could have been cashed by the owners without the assistance of an attorney. None of the owners of the savings bonds agreed to compensate respondent for cashing them.
The succession was not complex, did not require administration, and did not involve novel questions of law. It did not impose unusual time constraints on respondent, and he was not precluded from accepting other employment while handling it.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 (failure to communicate with a client), 1.5(a) (charging an unreasonable fee), 1.8 (conflict of interest), 1.15,1.16 (declining or terminating representation), 8.4(a), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
| zCount III — The Kendrix Matter
The following facts are not in dispute, having been stipulated to by the parties:
In 1994, Roy Kendrix hired respondent to handle his workers’ compensation matter. In July 1995, Mr. Kendrix was awarded a $31,900.35 judgment in the case. Included in the judgment was a $1,000 award for arbitrary and capricious failure to pay benefits and $3,000 in attorney’s fees in connection with the award for arbitrary and capricious failure to pay benefits, plus interest. In December 1996, respondent withheld $3,354.56 as attorney’s fees for the arbitrary and capricious finding. He also withheld as attorney’s fees $3,828.79, which represented 20% of the first $20,000 awarded, plus interest from the date of judicial demand, as provided by statute. However, respondent admitted that he failed to file a motion for approval of these attorney’s fees.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(a), 1.15, and 8.4(a).
Count IV — The NSF Check Matter
The following facts are not in dispute, having been stipulated to by the parties:
On May 30, 2002, respondent issued a $166.50 check from his trust account to pay the filing fee to the Clerk of Court for the Louisiana Supreme Court in a matter involving his client, Colin Williams. The check was returned for non-sufficient funds (“NSF”). On June 27, 2002, respondent remitted payment of the filing fee to the Clerk of Court via a certified check, and the clerk’s office accepted the filing on behalf of Mr. Williams.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5 (fee arrangements), |41.15, 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count V — The Hills Matter
In August 2002, Marvin Hills hired respondent to represent him in a child custody matter. Respondent and Mr. Hills entered into a verbal fee agreement, and Mr. Hills paid respondent a total of $750 for the representation. Respondent prepared and filed a rule for change of custody and drafted a single set of interrogatories and requests for production of documents. Mr. Hills terminated respondent’s services in February 2003.
Thereafter, in April 2003, respondent sent Mr. Hills a letter demanding he pay an additional $1,305 in attorney’s fees over and above the $750 previously paid. One month later, respondent sent Mr. Hills an itemized bill for attorney’s fees totaling $3,818.14 with a balance due of $3,193.14. The bill included services such as typing *179 and updating respondent’s time sheet, which should not have been included in the services rendered at respondent’s $125 hourly rate.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4.1.5, 8.4(a), 8.4(c), and 8.4(d).
Count VI — The Brown Matter
The following facts are not in dispute, having been stipulated to by the parties:
In July 2003, Jackie Brown hired respondent to represent her husband, Albert Brown, in a felony criminal matter. Respondent agreed to represent Mr. Brown at an hourly rate of $150 per hour for work done at his office and $250 per hour for work done out of his office.
| ,-Mr. Brown’s felony charge was reduced to a misdemeanor on the day of the trial in November 2003. The Browns paid respondent a total of $1,400 for the representation.
On February 11, 2004, respondent sent the Browns an itemized bill for $33,761.65. In the bill, he included charges for typing and updating his time sheet, which should not have been included in the services rendered at his hourly rate.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5, 8.4(a), and 8.4(c).
Count VII — The Lewy Physical Therapy Matter
The following facts are not in dispute, having been stipulated to by the parties:
Respondent represented Barnabus Whitley in a personal injury matter and guaranteed payment to Lewy Physical Therapy for treatment of Mr. Whitley’s injuries. Respondent settled Mr. Whitley’s claim and disbursed Mr. Whitley’s portion of the settlement funds to him on September 6, 2003. Despite withholding $562 from the settlement funds to pay Lewy Physical Therapy, respondent did not remit the funds until July 16, 2005.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15, 8.4(a), and 8.4(d). Respondent stipulated that he violated Rule 1.15(d) (failure to timely remit funds to a client or third person) by failing to promptly deliver the funds to Lewy Physical Therapy.
Count VIII — The Tayari Harris Matter
Respondent represented Tayari Harris in a criminal matter, the trial of which began in December 2005. During voir dire, respondent used all twelve of his | (¡peremptory challenges to remove Caucasian jurors from the panel. Respondent subsequently admitted that he excused the jurors “because of racial reasons,” leading the trial court to grant the State’s request for a mistrial.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (competence), 3.5 (impartiality and decorum of the tribunal), 8.4(a), and 8.4(d).
Count IX — The Joseph Harris Matter
On March 23, 2007, Joseph Harris hired respondent to represent him in a pending civil case in federal court. On that day, the two entered into a written contract for the representation. On April 13, 2007, respondent enrolled as Mr. Harris’ counsel of record. Motions to dismiss Mr. Harris’ case were granted on October 22, 2007.
There is no indication that respondent filed any opposition to the defendants’ motions to dismiss. Furthermore, respondent never made a court appearance on Mr. Harris’ behalf. Respondent last communicated with Mr. Harris in August 2008 and never informed Mr. Harris that he was no longer representing him.
*180 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4, 1.16(d) (obligations upon termination of the representation), and 8.4(a).
Count X — The Lewis Matter
Tracey Valmont paid respondent $500 to review Dwayne Lewis’ post-conviction relief matter. In July 2009, Mr. Lewis filed a disciplinary complaint |7against respondent, requesting a refund of the $500 because of alleged misconduct by respondent. Respondent did not respond to notice of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.2, 1.3,1.4, 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(a).
Count XI — The Valmont Matter
In January 2008, Tracey Valmont hired respondent to represent him in a personal injury matter against the Louisiana Department of Public Safety and Corrections. Mr. Valmont paid respondent a $500 advance deposit. Thereafter, respondent failed to take any material action in furtherance of Mr. Valmont’s claim. He also failed to adequately communicate with Mr. Valmont.
In October 2009, Mr. Valmont filed a disciplinary complaint against respondent. Respondent failed to respond to notice of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 3.2 (failure to make reasonable efforts to expedite litigation), 8.1(c), 8.4(a), and 8.4(c).
Count XII — The Wiley Matter
In December 2007, respondent and Christopher Wiley entered into an attorney-client relationship. Mr. Wiley paid respondent a total of $3,150 for his services. Of this amount, respondent earned only $1,545, leaving an unearned balance of $1,605, which he has not yet refunded.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c),[1]8.4(a), and 8.4(c).
1 sCount XIII — The Searls Matter
Respondent reviewed a civil claim that Gregory Searls wished to pursue, but he declined the representation. Mr. Searls did not pay respondent for reviewing his claim. In February 2010, Mr. Searls filed a disciplinary complaint against respondent, but respondent failed to respond to notice of the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, 8.1(c), and 8.4(a).
Count XIV — The Audit Matter
The following facts are not in dispute, having been stipulated to by the parties:
On May 14, 2010, respondent issued a $171.50 check from his trust account to pay the filing fee to the Clerk of Court for the Louisiana Supreme Court in a matter involving his client, Rosa Clark. The check was returned NSF. On June 2, 2010, respondent remitted payment of the filing fee to the Clerk of Court via a certified *181 check, and the clerk’s office accepted the filing on behalf of Ms. Clark.
Based on this NSF check, the ODC’s auditor, Angela Willis, contacted respondent and requested documents for a review of his trust account. However, the ODC ultimately had to issue a subpoena to respondent’s bank in order to obtain the requested documents.
Ms. Willis prepared a report of her findings with respect to respondent’s trust account, to which findings respondent has stipulated. In particular, respondent acknowledged that he was improperly using his trust account and maintaining his personal funds in the account. For example, on June 23, 2010, funds related to a succession matter were deposited into the trust account; however, these funds were used to pay respondent’s office expenses, as described in Ms. Willis’ report. On July 22, 2010, the client finally received $8,000 as her share of |3these funds, and she allowed respondent to retain $2,025.04 of the funds as a loan to cover respondent’s costs in connection with her grandmother’s legal matter. Respondent’s share of the funds was $1,300.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5, 8.1(c), 8.4(a), 8.4(c), and 8.4(d).
DISCIPLINARY PROCEEDINGS
In November 2010, the ODC filed formal charges against respondent. Respondent answered the formal charges, essentially denying any misconduct. Accordingly, the matter proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made the following findings regarding each count of the formal charges:
Count I — The committee accepted the facts as stipulated to by the parties. Additionally, the committee found that Tina’s access to the funds was delayed, but the check eventually cleared. The committee found no evidence that respondent knowingly or intentionally sought to deprive Tina of the funds at issue and determined there was no showing of actual client harm. The committee found that respondent’s mishandling of his trust account was merely negligent. The committee also noted respondent’s testimony that he left a “cushion” of personal funds in his trust account to pay service charges.
Based on these findings, the committee determined respondent negligently, but not knowingly or intentionally, violated Rule 1.15 of the Rules of Professional Conduct because, at the time of the misconduct, Rule 1.15 did not address how | inattorneys could pay bank service charges related to trust accounts. The committee did not address the alleged Rule 8.4(a) violation. Despite its finding of a violation of Rule 1.15, the committee dismissed the charges in this count on the basis they are prescribed pursuant to Supreme Court Rule XIX, § 31, which provides that “[a] disciplinary complaint, or the initiation of a disciplinary investigation with regard to allegations of attorney misconduct, where the mental element is merely negligence, shall be subject to a prescriptive period of ten years from the date of the alleged offense.”
Count II — The committee made factual findings consistent with the underlying facts described above. Additionally, the committee found that the fee respondent billed for his work on the succession, the fee respondent collected for his work on the succession, and the 25% fee respondent attempted to charge for cashing the sav *182 ings bonds were all excessive. Respondent also did not timely return the savings bonds to the owners and misrepresented to the owners that (1) they needed an attorney to cash the bonds and (2) they were personally obligated to pay his fee. Finally, the committee determined that respondent acted knowingly in soliciting a fee relative to the savings bonds and in failing to timely return the savings bonds to the owners, acted intentionally in providing misleading legal advice regarding the cashing of the savings bonds, and acted negligently in including the savings bond in the estate.
With respect to respondent’s fee, the committee determined that he violated Rule 1.5(a) of the Rules of Professional Conduct by collecting the $14,276.93 fee and Rule 8.4(a) by charging and attempting to collect the other fee amounts.[2] The committee further determined that respondent violated Rule 1.15 by failing to promptly deliver the savings bonds to the owners and violated Rule 8.4(c) by|ugiving the owners of the savings bonds misleading legal advice. However, the committee found insufficient evidence in the record to prove a violation of Rule 1.8 because respondent’s offer to buy real property owned by the estate was not accepted. The committee also determined the ODC did not prove violations of Rules 1.4 and 1.16.
Count III — The committee accepted the facts as stipulated to by the parties. Additionally, the committee found that respondent’s failure to file a motion for approval of his attorney’s fees was based on his belief that such a motion was not needed in light of the facts and, therefore, was a negligent failure. The committee also found the fees at issue were not excessive; thus, respondent would have been entitled to same. Finally, the committee found that the judgment awarding the attorney’s fees was rendered in open court in 1995, more than ten years before the ODC filed formal charges against respondent.
Based on these findings, the committee determined that violations of Rules 1.5(a) and 8.4(a) of the Rules of Professional Conduct were not proven by clear and convincing evidence. The committee then declined to address the alleged violation of Rule 1.15 for respondent’s negligent conduct in failing to obtain judicial approval of his fee and, instead, dismissed the charges on the basis they are prescribed pursuant to Supreme Court Rule XIX, § 31.
Count IV — The committee accepted the facts as stipulated to by the parties. Additionally, the committee found that Mr. Williams suffered no harm as a result of the check being dishonored, and respondent’s actions were negligent with respect to the insufficiency of funds. The committee could not determine the source of the funds used to ultimately pay Mr. Williams’ filing fee and, as such, could not find that respondent converted funds in this particular instance. However, respondent negligently converted client funds in other instances, evidenced by various overdrafts in his trust account, and knowingly failed to | i2reconciIe his trust account. The conversion was not for respondent’s personal use but was conversion from one client to another.
Based on these findings, the committee determined that respondent violated Rules 1.15 and 8.4(a) of the Rules of Professional Conduct. The committee further deter *183 mined that the ODC did not prove a violation of Rules 1.5 and 8.4(d).
Count V — The committee made factual findings consistent with the underlying facts described above. Additionally, the committee found that Mr. Hills paid respondent the amount he contends he and respondent agreed on as the attorney’s fees. As such, respondent did not actually collect more than Mr. Hills agreed to pay. Based on the work respondent performed, a $3,818.14 fee would be excessive, and respondent attempted to collect an excessive fee. Certain items contained in the itemized bill are not items that can be properly charged to a client. Respondent acted knowingly in submitting the itemized bill for an excessive fee that included improperly charged items. A potential for harm existed; however, because Mr. Hills did not remit additional funds, no actual harm occurred.
Based on these findings, the committee determined that respondent violated Rule 8.4(a) of the Rules of Professional Conduct by attempting to collect an excessive fee, but he did not violate Rule 1.5 by doing so (see footnote 2, supra). The committee also did not find a violation of Rule 1.4 because Mr. Hills did not testify at the formal hearing regarding respondent’s alleged failure to communicate with him. Finally, the committee determined that respondent did not violate Rules 8.4(c) and 8.4(d).
Count VI — The committee accepted the facts as stipulated to by the parties. Additionally, the committee found that respondent’s bills reflect items that cannot be charged to a client insofar as they constitute “overhead.” Respondent’s bill totaling $33,761.65 was excessive or unreasonable. However, the services rendered to the Browns exceeded the payments made to respondent. By letter 1 isdated February 11, 2004, respondent charged and attempted to collect an unreasonable fee. By letter dated September 8, 2004, respondent charged and attempted to collect an unreasonable fee. However, respondent did not make an agreement to collect an unreasonable fee because no agreement was reached. Respondent’s conduct was negligent.
Based on these findings, the committee determined that respondent violated Rules 1.5 and 8.4(a) of the Rules of Professional Conduct. The committee did not address the alleged Rule 8.4(c) violation.
Count VII — The committee accepted the facts as stipulated to by the parties. Additionally, the committee found that Lewy Physical Therapy was deprived of its funds for approximately one year and ten months. However, the funds were ultimately tendered. The committee further found that respondent knowingly failed to timely notify Lewy Physical Therapy of his receipt of the funds and knowingly failed to timely remit the funds.
Based on these findings, the committee determined that respondent violated Rules 1.15(d) and 8.4(a) of the Rules of Professional Conduct. The committee did not find a violation of Rule 8.4(d).
Count VIII — The committee made factual findings consistent with the underlying facts described above. Additionally, the committee found that, whether respondent’s statement about his reason for removing Caucasian jurors was true or not, he knew or should have known that the only possible result of his statement would be for the trial judge to order a mistrial.[3]
*184 Based on these findings, the committee determined that respondent violated Rules 8.4(a) and 8.4(d) of the Rules of Professional Conduct. However, the committee determined that the ODC failed to establish a violation of Rule 1.1 by 114clear and convincing evidence. Additionally, the committee determined that respondent lacked the requisite intent for a Rule 3.5 violation.
Count IX — The committee found that five days after respondent enrolled as counsel of record for Mr. Harris, a motion to dismiss his case was filed predicated on a failure to exhaust administrative remedies. The motion was set without oral argument. Thereafter, a motion for summary judgment was filed. The committee determined that beyond this information, there was not sufficient documentary evidence or testimony in the record upon which to make an assessment of the reasonableness of respondent’s actions in failing to respond to these motions.
Based on these findings, the committee determined the ODC failed to carry its burden of establishing by clear and convincing evidence that respondent violated any of the Rules of Professional Conduct as charged.
Count X — The committee made factual findings consistent with the underlying facts described above. Additionally, the committee found that respondent fully earned the $500 fee. The committee also noted that Mr. Lewis did not testify at the formal hearing.
Based on these findings, the committee determined the ODC failed to carry its burden of establishing by clear and convincing evidence that respondent violated Rules 1.1(a), 1.2, 1.3, 1.4, or 8.4(a) of the Rules of Professional Conduct. The committee did determine, however, that respondent violated Rule 8.1(c) as charged. Regarding the Rule 8.1(c) violation, the committee noted that several witnesses, including respondent, testified about damage done to respondent’s office around the time of the complaint. The committee determined that, while the damage does not excuse respondent’s failure to respond to the complaint, it does provide a reasonable basis for why respondent felt he could not defend himself.
Count XI — The committee made factual findings consistent with the underlying facts described above. Additionally, the committee determined that Mr. | ifiValmont’s testimony was credible. The committee also found that respondent was not hired to represent Mr. Valmont in his criminal defense. Furthermore, respondent’s charge of $500 in “expenses” to travel from Baton Rouge, Louisiana to Cottonport, Louisiana to meet with Mr. Valmont was an unreasonable amount. Respondent also failed to explain to Mr. Valmont the purpose of the $500 payment, and he did not provide Mr. Valmont with an accounting. Respondent acted negligently in charging an unreasonable fee for travel expenses. Respondent acted knowingly in neglecting Mr. Valmont’s legal matter, failing to communicate with him, and failing to provide him with an accounting of the $500. Respondent’s conduct caused actual harm to Mr. Valmont in that his claim prescribed.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as charged, with the exception of Rule 8.4(c). The committee determined that respondent lacked the requisite intent for a Rule 8.4(c) violation.
Count XII — The committee made factual findings consistent with the underlying facts described above. Based on these findings, the committee determined that respondent violated Rule 8.4(a) of the Rules of Professional Conduct. However, *185 the committee found no evidence in the record to support the ODC’s allegation that respondent also violated Rules 8.1(c) and 8.4(c).
Count XIII — The committee made factual findings consistent with the underlying facts described above. The committee also noted that Mr. Searls did not testify at the formal hearing, and the ODC called no other witnesses to testify regarding this count. Respondent admitted that he did not respond to the disciplinary complaint because he could not locate Mr. Searls’ file and, therefore, could not prepare a substantive response.
h Rased on these findings, the committee determined that respondent violated Rule 8.1(c) of the Rules of Professional Conduct. However, the committee found no violation of Rules 1.8, 1.4, and 8.4(a).
Count XIV — The committee accepted the facts as stipulated to by the parties. Additionally, the committee adopted the findings in Ms. Willis’ report that respondent commingled personal funds with client funds. The committee also found that respondent routinely failed to reconcile his trust account statement and consistently placed personal funds into his trust account. With respect to the commingling of funds, there was a clear pattern of misconduct over time in that respondent repeatedly failed to hold his clients’ funds separate from his own. Although none of respondent’s clients were harmed, the potential for client harm existed. Respondent knowingly commingled funds and intentionally failed to cooperate with the ODC.
Based on these findings, the committee determined that respondent violated Rule 8.4(a) of the Rules of Professional Conduct. However, the committee determined the ODC failed to prove that respondent violated Rules 1.5, 8.4(c), and 8.4(d). The committee did not address the alleged violation of Rule 8.1(c).
The committee then determined that the “heartland” of respondent’s misconduct involves (1) repeated commingling and mishandling of his trust account and (2) repeated instances of collecting or attempting to collect excessive fees. For the most part, respondent acted knowingly. As such, based on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is suspension.
In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1972), and indifference to making | ^restitution. In mitigation, the committee found the absence of a prior disciplinary record, character or reputation, and a delay in the disciplinary proceedings.
In light of the above findings, the committee recommended that respondent be suspended from the practice of law for three years. The committee further recommended the following: (1) respondent pay $500, plus interest, to Mr. Valmont, (2) respondent pay $1,605, plus interest, to Mr. Wiley, and (8) respondent submit the fee dispute with Ms. Matthews’ estate to the Louisiana State Bar Association’s Lawyer Fee Dispute Resolution Program.
Respondent filed an objection to the sanction recommended by the committee, asserting it is too harsh.

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee was correct in accepting the facts as stipulated to by the parties. The board also determined that the committee’s additional factual *186 findings are not manifestly erroneous. Based on these findings, the board determined that respondent violated the Rules of Professional Conduct as follows:
Count I — Respondent violated Rules 1.15 and 8.4(a) as charged. The committee erred in dismissing the charges as prescribed because the disciplinary complaint was filed within ten years of the misconduct at issue. Therefore, Supreme Court Rule XIX, § 31 does not apply.
Count II — As found by the committee, respondent violated Rules 1.5(a), 1.15, 8.4(a), and 8.4(c). However, there is insufficient evidence to prove violations of Rules 1.4,1.8, and 1.16.
Count III — Respondent violated Rules 1.15 and 8.4(a) because he did not seek judicial approval prior to withholding his fees. However, he did not violate Rule 1.5(a) because attorney’s fees that are awarded judicially and/or are allowed | ]Sby law cannot be deemed excessive. The committee erred in dismissing the charges as prescribed because the disciplinary complaint was filed within ten years of the misconduct at issue. Therefore, Supreme Court Rule XIX, § 31 does not apply.
Count IV — As found by the committee, respondent violated Rules 1.15 and 8.4(a). However, the committee correctly concluded that the ODC failed to carry its burden of proof regarding Rules 1.5 and 8.4(d).
Count V— Respondent violated Rules 8.4(a) and 8.4(c) because the fees he attempted to collect were excessive and because the amount he sought to collect in May 2003 increased substantially from the amount he demanded in April 2003. However, as found by the committee, the record does not contain sufficient evidence to support a finding that respondent violated Rules 1.4,1.5, and 8.4(d).
Count VI — As found by the committee, respondent violated Rules 1.5 and 8.4(a). However, he did not violate Rule 8.4(c) because his conduct was negligent.
Count VII — As found by the committee, respondent violated Rules 1.15(d) and 8.4(a) but not Rule 8.4(d).
Count VIII — As found by the committee, respondent violated Rules 8.4(a) and 8.4(d) but not Rules 1.1 and 3.5.
Count IX — As found by the committee, the ODC failed to carry its burden of proof with respect to the allegations of misconduct in this count.
Count X — As found by the committee, the ODC established only a violation of Rule 8.1(c).
Count XI — Respondent violated Rules 1.3, 1.4, 1.5, 3.2, 8.1(c), and 8.4(a) but not Rule 8.4(c).
Count XII — The committee’s findings and conclusions regarding rule violations are not manifestly erroneous; thus, the board adopted same.
| wCount XIII — The board adopted the committee’s conclusion that the ODC established only a violation of Rule 8.1(c).
Count XIV — The board adopted as correct the committee’s findings and conclusions regarding rule violations. Like the committee, the board did not address the alleged violation of Rule 8.1(c).
The board then determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted negligently in failing to maintain and reconcile his trust account over time. However, in certain client matters, respondent acted knowingly and, at times, intentionally. On occasion, he caused actual harm to clients. However, the harm appears minimal, and the problems were quickly resolved. The board agreed with the committee that the baseline sanction is suspension. The board *187 also agreed with the aggravating and mitigating factors found by the committee.
Turning to the issue of an appropriate sanction, the board concluded that the committee’s recommended sanction is too harsh. Like the committee, the board concentrated on the “heartland” of respondent’s misconduct, which it felt was his negligent mismanagement of his trust account. After considering case law addressing similar misconduct, a majority of the board recommended that respondent be suspended from the practice of law for one year and one day, with all but six months deferred, followed by two years of supervised probation with the following conditions: (1) respondent provide $500 in restitution to Mr. Valmont; (2) respondent provide $1,605 in restitution to Mr. Wiley;[4] and (3) respondent arbitrate the fee dispute at issue in the Matthews Succession matter. Two board members dissented and would recommend a suspension from the practice of law for one year and one day, with no time deferred.
12pThe ODC filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (Lall/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Prior to addressing the merits, we must first determine whether any of the formal charges are prescribed. The hearing committee determined that Counts I and III, which involved negligent conduct occurring between 1996 and 2000, were prescribed under the ten-year prescriptive period set forth in Supreme Court Rule XIX, § 31. However, the board rejected this conclusion, finding the complaints and disciplinary investigations were commenced within ten years of the misconduct. Respondent argues the board erred in this regard, and also argues that Count II of the formal charges should be dismissed as prescribed.
Supreme Court Rule XIX, § 31 provides that “[a] disciplinary complaint, or the initiation of a disciplinary investigation with regard to allegations of attorney misconduct, where the mental element is merely negligence, shall be subject to a prescriptive period of ten years from the date of the alleged offense.” For this liberative prescriptive period to apply, two elements must be established: (1) the 121 disciplinary complaint or investigation must be instituted within ten years of the underlying conduct, and (2) the lawyer must have acted negligently. See In re: Stanford, 10-1547 (La.12/17/10), 50 So.3d 151.
In the instant case, we find the first element is not satisfied as to any of the first three counts of the formal charges. In Count I, both the misconduct and the *188 filing of the disciplinary complaint occurred in July 2000. In Count II, the misconduct began in June 2000 and continued through February 2002; the disciplinary complaint was filed in August 2001. In Count III, the misconduct occurred in December 1996, and the disciplinary complaint was filed in May 2002. Clearly, these three complaints were filed well within ten years of the date of the underlying conduct. Therefore, the formal charges are not prescribed.
Turning to the merits, the record of this matter indicates that respondent mishandled his client trust account, resulting in commingling and conversion, collected an excessive fee, failed to timely turn over property and funds belonging to third parties, failed to seek approval of his attorney’s fees in a workers’ compensation matter, charged clients his hourly fee for services such as typing and updating his time sheet, admitted to removing Caucasian jurors from a jury panel solely because of their race, which caused a mistrial, failed to refund unearned fees, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent violated the Rules of Professional Conduct as found by the disciplinary board. Additionally, the record supports a finding that respondent violated Rule 8.1(c) in Count XIV as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 [22So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
As recognized by both the committee and the board, the majority of respondent’s conduct revolves around the improper management of his trust account. While much of respondent’s misconduct was negligent, he also acted knowingly and at times intentionally. His actions caused actual harm to his clients, third parties, and the legal system.
The applicable baseline sanction in this matter is suspension. The record supports the aggravating and mitigating factors found by the committee and adopted by the board.
Considering all the circumstances, we find the appropriate sanction for respondent’s misconduct in this case is a three-year suspension, with all but one year deferred. Following the active portion of his suspension, respondent shall be placed on supervised probation for a period of two years, subject to the following conditions: (1) respondent shall attend the Ethics School and Trust Accounting School offered by the Louisiana State Bar Association’s Practice Assistance Counsel; (2) respondent shall pay $500, plus interest, to Tracey Valmont; (3) respondent shall pay $1,605, plus interest, to Christopher Wiley; and (4) respondent shall submit his fee dispute with the Estate of Fannie Matthews to the Louisiana State Bar Association’s Lawyer Fee Dispute Resolution Program. We caution respondent that any violation of the conditions of probation, or any other misconduct during the probationary period, may be grounds for making the deferred portion of the suspension ex-ecutory, or imposing additional discipline, as appropriate.
*189 lajDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Otha Curtis Nelson, Sr., Louisiana Bar Roll number 9940, be and he hereby is suspended from the practice of law for three years. It is further ordered that all but one year of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for two years, subject to the conditions set forth herein. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In the formal charges, the ODC alleged that respondent failed to respond to notice of the disciplinary complaint related to this count. However, the ODC failed to provide documentary evidence or testimony in support of this allegation.

. The committee reasoned that, at the time of the misconduct, charging an unreasonable fee was not specifically prohibited by Rule 1.5. Thus, the committee determined that respondent did not expressly violate Rule 1.5 by charging and attempting to collect unreasonable fees but did violate Rule 8.4(a) in doing so.

. The committee noted that, during the formal hearing, respondent offered a more race-neutral explanation of his "racial reasons” for excluding Caucasian jurors when he indicated that race may be a component but is not the only component.

. The board actually recommended that respondent provide $1,650 in restitution to Mr. Wiley. However, this appears to be a typographical error as the record indicates that respondent owes only $1,605 in restitution to Mr. Wiley.