# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 7, 2009

Charles R. Fulbruge III
Clerk

No. 08-30826
Summary Calendar

In the Matter of:

R MICHAEL MOITY, JR

Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:07-MC-1

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Michael Moity, an attorney, appeals an order disbarring him from the practice of law for one year in the U.S. District Court for the Western District of Louisiana. Moity was disciplined for his conduct towards a judicial law clerk during a telephone conversation, for making misrepresentations to the court during a contempt hearing, and for impugning the integrity of two federal judges in a prior brief before this court. He raises eight issues in this ex parte appeal. There is no merit to any of them, and we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We start by explaining the context for the misconduct that was found. Moity was the attorney for a plaintiff in a suit filed in Louisiana state court on February 9, 2006, for personal injuries resulting from a car accident. The suit was removed by the defendant and insurer to the U.S. District Court for the Western District of Louisiana. As the litigation proceeded, U.S. Magistrate Judge Mildred Methvin scheduled a pretrial conference under Rule 16.

When neither attorney appeared at the conference, a law clerk for the magistrate judge called the attorneys. Her conversation with Moity is what started him on the path that has brought him to this court.

The law clerk, Stacey Blanke, would later rely on detailed notes she took to recount the conversation to the magistrate judge. As his second issue on appeal, Moity argues that the law clerk must have engaged in misconduct by surreptitiously taping the conversation, as her report was too detailed to have been based strictly on contemporaneous, handwritten notes. We reject that issue now, as there is no evidence to support Moity's speculation.

We quote from a document entitled "Certification of Contempt," prepared by Magistrate Judge Methvin after Ms. Blanke told her what had occurred:

> When Mr. Moity took the call, he started speaking rapidly about some requests for admissions that defense counsel had just sent him. Ms. Blanke stated that she was not calling about discovery, but rather was calling to find out why Mr. Moity had failed to appear at the Rule 16 conference. Mr. Moity responded that he had "waived" the conference, that he'd agreed with defense counsel to "waive" the hearing, or something to that effect. Ms. Blanke told Mr. Moity that the conference cannot be waived, and that the Rule 16(f) conference order requires the personal attendance of counsel in chambers. . . .
>
> Mr. Moity referenced a telephone message from the court which he acknowledged that he had not returned. Indeed, Ms. Blanke had placed two telephone calls to Mr. Moity in the days before the conference, one on Tuesday, September 19 and one on Wednesday, September 20. When Mr. Moity mentioned those phone

calls, Ms. Blanke confirmed that she had indeed called him, and that both messages specifically referenced the Rule 16 conference. At that point, Mr. Moity started yelling and asking, in a very angry tone, whether Ms. Blanke had specifically included in her messages to his office that he was supposed to appear at the Rule 16 conference. Ms. Blanke asked Mr. Moity to calm down, and then asked if he was suggesting that it was her responsibility to call him and remind him about the conference. Mr. Moity stated he was not implying that, but then started questioning Ms. Blanke, in what she perceived to be a very ugly tone, why she hadn't done so, since she was "already calling anyway."

. . . .

Ms. Blanke again asked Mr. Moity why he hadn't returned her calls, stating that she would need to explain everything to the judge when she explained why he'd failed to appear at the Rule 16 conference. Mr. Moity responded by asking, "Do you know how many calls I get??? I'm swamped! You think you're busy?"

Ms. Blanke told Mr. Moity that there was no reason to get upset, that this was a professional phone call to assess why he had not returned the court's phone calls and why he'd failed to appear at a court-ordered conference for the purpose of the court's assessment of sanctions. At some point, Mr. Moity cut Ms. Blanke off in mid-sentence, yelling "Stop saying 'Mr. Moity.' You've said my name about 5 times, I know my name!"

Ms. Blanke repeated that there was simply no reason to get upset, that this was part of her job, and that it was her responsibility to determine why counsel fail to appear at hearings so that the judge can determine the appropriate sanction. Mr. Moity responded by saying, "I'm not upset! You're putting something negative on me! You're threatening me that you're going to say something negative about me to the judge." Ms. Blanke responded that she was in no way threatening him, but rather was giving him an opportunity to explain his reasons for failing to appear. Mr. Moity responded, "You know what, I don't want you saying *anything* to the judge. You tell her to call me personally, and I will explain what happened. I want to talk to her myself. You get her to call me." Ms. Blanke explained that the judge does not ordinarily

discuss such matters with counsel personally, but that she would explain to the judge that Mr. Moity wanted to talk to her himself.

This telephone conversation occurred on September 21, 2006. That same day, Magistrate Judge Methvin prepared the Certification of Contempt from which the previous lengthy excerpts were taken and sent it to U.S. District Judge Tucker Melançon. Later that day, Judge Melançon ordered Moity to appear the next day for a show cause hearing on his conduct. A hearing was held on September 22, in which Moity was questioned about his phone conversation. A second hearing, for which Moity was advised to appear with his own counsel, was then scheduled for September 27, 2006. At the later hearing, Moity withdrew the previously filed denials to some portions of Magistrate Judge Methvin's report of what had occurred.

Moity testified under oath at the second hearing and made certain denials of prior disciplinary problems that would later be found to have been false and formed one of the bases for his disbarment. District Judge Melançon found Moity to be in contempt, fined him $100, and required him to attend anger management class and to perform 40 hours of community service. He also was told to apologize both to the magistrate judge and to her law clerk. Moity apologized at the hearing, as both of those individuals were present.

A few weeks later, Moity filed a motion to have both Magistrate Judge Methvin and District Judge Melançon recuse themselves for alleged bias. The motion was denied, but District Judge Melançon also vacated his previous contempt ruling. He found that some of Moity's representations at the hearing were likely false. Therefore, the entire contempt issue was referred to a different magistrate judge for further action. District Judge Melançon now suggested that disbarment might be in order.

District Judge Melançon gave the newly assigned magistrate judge, Karen L. Hayes, copies of records from a 2003 state court proceedings in which Moity's

conduct was questioned. These records potentially demonstrated that Moity's statements in the September 27, 2006 hearing were false. A show cause hearing was scheduled, but after filing a memorandum, Moity waived the hearing.

The final actions for which Moity would be found to have engaged in misconduct were in language used in a brief to this court. On September 29, 2006, Moity appealed the contempt order. In that brief, Moity argued – according to the report and recommendation in this case – "that Judge Melançon and Magistrate Judge Methvin violated Canon 2 of the Code of Judicial Conduct when their offices purportedly contacted [state] Judge Conery's office concerning Mr. Moity's prior disciplinary proceedings." The section of the Fifth Circuit brief on which this characterization is based contained these statements:

> While the substance of conversation between Magistrate Methvin's office (and/or the Honorable Tucker Melançon's office) and State District Judge John E. Conery and/or his office is unknown, it would appear same could constitute testimony by one Judge to the other, and in violation of Canon 2. Even without considerations of relevance and veracity of the "information" conveyed, the exchange is improper because there is no opportunity to confront statements made by the members of the judiciary. Moreover, this matter occurred between September 21, 2006 to September 27, 2006, and during that period, Appellant's counsel knew nothing of the exchange.

This court dismissed the appeal.

After considering this evidence and Moity's memoranda, Magistrate Judge Hayes found Moity to have committed misconduct in his phone conversation with the law clerk, at the hearing on September 27, 2006, and in the brief that he filed with the Fifth Circuit in the initial appeal. It was recommended that he be disbarred from the Western District of Louisiana for one year, and that he take certain courses on the federal procedural rules, on professionalism, and on both law office and anger management. Finally, he should pay certain court costs and submit written apologies to the magistrate judge and her law clerk.

5

The recommendation was reviewed by District Judge Donald E. Walter, then submitted to all the active judges for the U.S. District Court for the Western District of Louisiana. On August 5, 2008, the sole penalty assessed was Moity's disbarment for one year. The present appeal followed.

DISCUSSION

A decision to discipline an attorney, even to the extent of disbarring him, is reviewed through appellate court bifocals. Whether a particular disciplinary action was appropriate is viewed through the broader abuse of discretion lenses, while we examine whether an attorney's actions were misconduct at all by a higher-magnification, *de novo* look. *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999). Obviously, the loss of the right to practice in the U.S. District Court for an attorney whose practice with some frequency has taken him there is a serious matter. We similarly take seriously our responsibility to make a careful review of the fact-finding and the district court's exercise of discretion.

The U.S. District Court for the Western District of Louisiana has adopted a substantial number of local rules, some but not all of them identical to the rules of one or both of the other two Louisiana district courts. Among the rules are those for the admission of attorneys to practice in the district, their conduct while practicing, and discipline for any misconduct. *See* W.D. La. Loc. Civ. R. 83.2. Moity's appellate challenges to his discipline do not include a claim that there was any failure of the necessary process. We nonetheless summarize the procedures that are supposed to be, and were, followed.

The Western District of Louisiana has its own procedural rule for attorney discipline. *See id* at 83.2.10W. The essential features are that any judge of the Western District may initiate disciplinary proceedings. Among the options is that the relevant judge may herself take action or instead submit the question to a magistrate judge, the chief judge, or the chief judge's designee for a hearing. *Id*. at 83.2.10W(A)(1). In the present case, Magistrate Judge Methvin submitted

the matter to District Judge Melançon, who conducted a hearing. After finding contempt and prescribing a remedy, the district judge vacated that order and referred the issues to a second magistrate judge. As noted above, Moity does not allege error in these procedures.

Under the local rules, when the hearing is concluded, the magistrate judge is to submit the proceedings to the active judges of the district court. Those judges will by a majority determine what discipline, if any, is appropriate. *Id.* at 83.2.10W(B)(2). Those steps also were taken.

The first appellate complaint is that Moity's testimony at a September 27, 2006 contempt hearing should not have been considered. The district court had asked counsel if he objected to Moity's answering questions under oath. Moity's counsel responded, "possibly," and then discussed with the court whether the contempt proceeding was criminal or civil in nature. The district court explained that it did not view the proceeding as criminal, but Moity asserts that the penalties that followed – a fine, community service, anger management counseling, and an apology – are akin to criminal penalties. Based on the district court's purported "assurance" that the proceeding was a civil contempt hearing, Moity asks us to strike his misrepresentations from the record.

Regardless of how the contempt proceeding was characterized, the penalty imposed by District Judge Melançon after that hearing was subsequently vacated and the case transferred to Magistrate Judge Hayes. Her report and recommendation issued after Moity had an opportunity to address these questions. Even if the penalty imposed after the September 27 hearing was the kind that would be characterized as criminal contempt, the label does not affect the right of a court later to rely on falsehoods made when Moity may have thought the matter would be handled as civil contempt. Perhaps the district judge had contemplated civil contempt, where a coercive order might be entered that would allow Moity to cancel the penalty by some act, then changed his mind

7

because of Moity's perceived misconduct at the hearing. Moreover, an attorney never has the right to engage in unethical conduct in open court free from the risk of punishment, regardless of the nature of the proceedings. There was no error in using his testimony as a basis for contempt.

Furthermore, the transcript from the contempt hearing does not support that the district court coerced Moity into testifying under the assumption that he would not be susceptible to disciplinary punishment. Instead, the only words that could be construed as an "assurance" are statements made by the district court with respect to imprisonment. The following exchange is illustrative:

> THE COURT: We're not really talking about a term of imprisonment in my view right now and I don't want you to go off on that track. I don't want Mr. Moity thinking I'm getting ready to put him in jail. I don't want the United States Deputy Marshal thinking I'm getting ready to haul him off. That's not the issue to me. . . . What I want to ask him under oath is about his past up until this event. That's what I want to know.
>
> [Moity's Counsel]: Thank you, Your Honor.
>
> THE COURT: Do you have an objection to him taking the oath?
>
> [Moity's Counsel]: No, sir.
>
> THE COURT: Mr. Moity, do you mind taking the oath?
>
> Mr. Moity: I do not.

Moity also objects to District Judge Melançon's contacting a state judge to determine whether Moity had been disciplined in that court. This was done because Moity had assured the district judge that he had not been previously disciplined beyond certain penalties that he admitted. The state court judge passed along the documents supporting that Moity three years earlier had been held in contempt, required to pay $500 in attorney's fees and court costs, and ordered to attend ethics training. Some of the punishment were suspended,

pending compliance with certain conditions. When Moity did not comply, the state judge sentenced Moity to 90 days in jail, again suspended. Moity admitted to many of these events in his September 27, 2006 testimony, but not fully.

Moity alleges it was error for the district judge, once learning of the discipline from Moity's testimony, even to contact the state court to get the details. We find that everything obtained was official and public records of those former proceedings. In an attorney disciplinary matter such as this, there is not another represented party who through the adversary system can obtain relevant evidence. Perhaps the district judge could have had Moity himself obtain certified copies of such records. Still, we find no prejudice to Moity when the district judge, upon learning of the problems Moity encountered in a particular earlier action in a different court, took the initiative to get records of those earlier proceedings. Certified records from other courts are within the hearsay exception for public records and need no sponsoring witness. Fed. R. Evid. 803(8); *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 291-92 (5th Cir. 2002). One court may also take judicial notice of another court's judicial actions. *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004). The district court properly obtained this information.

Moity also argues that the evidence from the state court proceeding does not support that he mischaracterized the discipline that he there received. We have examined the transcript of the September 27, 2006 hearing and compared it to the evidence of what occurred in 2003 in state court. The central shortcoming was that Moity failed to indicate that there were two hearings, the second necessitated by his failure to comply with the initial penalties. These and other omissions left the impression at the September 27 hearing that the state judge had levied a sanction, that Moity learned his lesson and complied, and that the matter was settled. The reality is that Moity failed to comply with the initial

punishment and had to be brought before the state judge a second time. We agree that Moity's testimony violated his obligations as an attorney.

Moity further argues that disbarment was an inappropriately severe punishment for his "curt conversation," as he calls it. The conversation reported by the magistrate judge's law clerk displayed severe disrespect to the court by the anger and harsh tone shown to a representative of the magistrate judge. This was followed by additional evidence of a lack of candor in sworn testimony when the very serious matter of a contempt hearing was held. We are less certain that the language in a brief to this court, which might be unduly critical of Western District judges, is something which the district court should sanction. Whether it is or not, we also find the language in the brief to be the least important of the three findings of contempt. We find no abuse of discretion in settling upon a one-year disbarment from one court for these offenses.

There are many other subparts of Moity's allegations. For example, he argues that not all documents and not all witnesses were considered, that the district court judge had a personal bias against him, that the judge was angry and unnecessarily harsh, and that mitigating evidence was intentionally not included in the report and recommendation submitted to the district court judges who ruled on his disbarment. We find no merit in any of Moity's arguments and have discussed only those specific allegations that justified discussion.

We have reviewed the record and conclude that Moity's disbarment is supported by clear and convincing evidence. *See In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). Accordingly, the district court did not abuse its discretion, and we AFFIRM. Moity has filed a motion to supplement the record with records of various other proceedings. We find no relevance to what occurred in the other proceedings on the issue of whether this sanction was properly issued as a result of the conduct described. The motion is DENIED.