# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-98001
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2014

Lyle W. Cayce
Clerk

In re:  DONNA GRODNER,

      Appellant

Appeal from the United States  District Court
for the Middle District of Louisiana
USDC No. 3:14-MC-50

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Attorney Donna U. Grodner challenges her sixty-day suspension from practicing in the Middle District of Louisiana.  Finding that none of the numerous arguments she raises to challenge the suspension order are meritorious, we affirm.

## I.

The disciplinary proceeding against Grodner arose out of her conduct in a civil case before Chief Judge Brian A. Jackson in the Middle District of Louisiana.  In connection with her representation of inmate Darrin Robinson

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-98001

in a civil rights case against the State of Louisiana, Grodner filed a motion requesting that certain inmates housed in the same correctional facility as Robinson be allowed to provide testimony by video. The state did not oppose this *form* of testimony. Judge Jackson denied the order, however, requiring the incarcerated inmates to appear in court. As a result, Grodner filed five new motions requesting that the district court subpoena certain inmates to testify in court. Grodner styled those motions "unopposed," although she admittedly never contacted opposing counsel to confirm this. Even after opposing counsel filed a memorandum clarifying their opposition to the subpoenas, Grodner proceeded to file three more "unopposed" motions requesting subpoenas.

Before trial was set to begin, the district court held a hearing on the pending motions, including Grodner's "unopposed" requests for subpoenas. The district court confronted Grodner about her misrepresentations, and the following colloquy ensued:

> BY THE COURT: [Y]ou represented in your motions for the issuance of subpoenas to witnesses that the State didn't object to some of these. Now I'm informed by the state that, yes, they do object to the issuance of subpoenas to certain of those.
> . . .
> BY MS. GRODNER: And, your Honor, the reason that was put, because your Honor issued an order saying that they would have to be live testimony. Now, they had motions pending . . . so, that your Honor issued a ruling that has to be live testimony, we didn't know that there was any objection to [there] being live testimony. . . .
> BY THE COURT: . . . Did you confer with Ms. Collier, Mr. Sanders or anyone else at the Attorney General's Office before you included in your motion that the State had no objection?

No. 14-98001

BY MS. GRODNER: No, your Honor.  It was simply on the judge's order. . . .

BY THE COURT: Do you understand that there's a huge difference between according to the judge's order, we can do this, and saying that the state has no objection? You essentially lied to me.

BY MS. GRODNER: I didn't intend it to be a lie, your Honor.  I just intended to get – there was only two ways the witnesses can be produced, either video or ad testificandum.

BY THE COURT: I'm not talking about the substance here.  I'm talking about the fact that you represented to the Court in a pleading filed in my court, that . . . the defendants had no objection to the issuance of these – of subpoenas when, in fact, they had objections.

And not only that, there wasn't even any misunderstanding.  Because by your own admission, you didn't even bother to check with the state about that. . . . I'm going to give you an opportunity, one opportunity, to address that before I make a ruling on the motion – on the order to show cause.  Because I'm going to tell you right now.  I just flat out think that's a gross misrepresentation to the Court. . . . I'm at a loss to explain how you could have included that language in your motion.

BY MS. GRODNER: Simply because your Honor had ordered it had to be the other way.  So, that, to me, indicated it was, you know, that's an ex parte motion. . . .

BY THE COURT: The fact of the matter is, is that you admitted that, although you've indicated in the motion that you conferred with counsel, there was no opposition, you didn't, in fact, confer with counsel to ensure that there was no opposition.

And, so, on that basis, I will issue sanctions, Ms. Grodner.  And I'm going to counsel you that if that happens again you will be removed from the roles of this Court and you will not be permitted to practice within the Middle District ever again.

3

No. 14-98001

After the conclusion of the trial, Chief Judge Jackson issued an Order to Show Cause, requiring Grodner to explain why she should not be sanctioned for her misrepresentations. As the bases for potential disciplinary action, the Order cited the Middle District of Louisiana's Local Rules 83.2.4[1] and 83.2.8;[2] Louisiana Rules of Professional Conduct 3.3 (candor toward the tribunal), 3.4 (fairness to opposing party and counsel), 4.1 (truthfulness in statements to others), and 8.4(c) (stating that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation"); and the district court's inherent powers. The district court also notified Grodner that a hearing would be set for August 21, 2014, and that possible sanctions could include "reprimand, ethics training, suspension, disbarment, and/or the payment of a civil fine."

Grodner filed a response in advance of the hearing and unsuccessfully requested that Chief Judge Jackson not be involved in hearing the matter. At the hearing, the en banc district court laid out the procedural rules governing the hearing and reiterated, at Grodner's attorney's request, the bases for the Order to Show Cause. Grodner testified on her own behalf in front of the four judges but did not call any other witnesses. On September 2, 2014, the judges suspended Grodner from admission to the district court for a sixty-day period. Grodner timely appeals.

---

[1] "This court hereby adopts the Rules of Professional Conduct of the Louisiana State Bar Association, as hereafter may be amended from time to time by the Louisiana Supreme Court, except as otherwise provided by a specific rule or general order of a court."

[2] "Everyone who appears in court in proper person and every attorney permitted to practice in this court shall be familiar with these rules. Willful failure to comply with any of them, or a false certificate of compliance, shall be cause for such disciplinary action as the court may see fit, after notice and hearing."

No. 14-98001

## II.

"Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *United States v. Nolan*, 472 F.3d 362, 371 (5th Cir. 2006). Therefore, although we review *de novo* whether an attorney's actions were actually misconduct subject to sanctions, we review only for abuse of discretion whether the form of discipline was appropriate. *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999).

Grodner presents several arguments on appeal that can be grouped as follows: (1) the district court lacked subject matter jurisdiction over the disciplinary proceeding; (2) there is no private cause of action to enforce a federal court's Local Rules or state rules of professional conduct; (3) there was insufficient evidence to support the charge of misconduct; and (4) Grodner was not afforded due process because she was not notified of the witnesses and evidence that would be considered and the adjudicators were not impartial.

We can easily dispose of her first two arguments which are frivolous in light of well-established case law authorizing district courts to hold disciplinary hearings for attorneys admitted to practice before it. "It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993) (citing *In re Snyder*, 472 U.S. 634, 643–44 (1985)); *see also Crowe v. Smith*, 151 F.3d 217, 229–30 (5th Cir. 1998) (collecting cases); *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 n.10 (5th Cir. 1968) ("The power of a court to discipline members of its own bar can scarcely be doubted seriously. An attorney is under no obligation to seek admission to the bar of a United States district court. . . . But when he does apply and is admitted he secures certain privileges and also assumes definite obligations." (citation omitted)). Grodner's arguments about a private right of action ignore that the hearing did not involve a suit against her for money, but rather a

No. 14-98001

determination whether alleged unprofessional conduct should result in the relinquishment of the privilege of practicing in federal court. And her concern about a federal court enforcing state rules of professional conduct is off the mark because the Middle District of Louisiana's Local Rules incorporate the state rules, *see* LR83.2.4, and the court did not take any action with respect to her state bar membership.

As to Grodner's due process challenges, although a federal court's disciplinary proceedings are quasi-criminal, they do not require the same constitutional safeguards attendant to criminal proceedings. *See,e.g.*, *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254–55 (5th Cir. 2000) ("[A]ttorney discipline proceedings require proof only be clear and convincing evidence, as opposed to 'beyond a reasonable doubt.'"). Grodner repeatedly analogizes and cites to cases involving criminal contempt in arguing, among other things, that an independent prosecutor should have been appointed. But those cases are inapposite.[3] In a criminal contempt proceeding, which can result in a loss of liberty, "there must actually *be* an independent prosecutor of some kind, because the district court is not constitutionally competent to fulfill that role on its own." *Crowe*, 151 F.3d at 227–28 (emphasis in original). There is no such requirement in an administrative disciplinary proceeding, which "implicates an independent and fundamental duty of the district court." *Id.* at 230. ("[O]ur precedent emphatically dismisses such extensive procedural hoop-jumping for the far less serious disciplinary sanctions of suspension and reprimand.").

---

[3] Throughout the proceedings and on appeal, Grodner also repeatedly refers to Rule 11 sanctions and the accompanying "snapshot rule." As the district court repeatedly clarified, "[t]his is a disciplinary proceeding for the failure of a lawyer admitted to practice in this court to abide by [the local rules]." Therefore, like her arguments that relate to contempt proceedijngs, her arguments concerning Rule 11 sanctions are also not helpful because she was not sanctions under Rule 11.

No. 14-98001

We also do not agree with Grodner's claims that she was deprived of other procedural safeguards required by due process.  Attorneys facing discipline are entitled to fair notice of the charge and an opportunity to be heard.  *In re Ruffalo*, 390 U.S. 544, 550 (1968); *In re Sealed Appellant*, 194 F.3d at 670.  Only rarely, however, will more be required.  *Sealed Appellant 1*, 211 F.3d at 254.  The district court checked all the required procedural boxes: Grodner was warned by the district court that she was on thin ice during the pretrial hearing in *Robinson*; she received an Order to Show Cause detailing the bases for the disciplinary action and the date of the hearing; she was allowed to respond in writing in advance of the hearing; and a hearing was held at which she had an opportunity to testify on her own behalf.  During the hearing itself, the district court was meticulous in creating a record that reflects the court's consideration of Grodner's due process rights.  The district court explained that the hearing was "to afford [Grodner] her due process right to be heard and to explain and or rebut the information contained in the order to show cause," and it detailed the "procedural requirements that must be found before sanctions may be imposed . . . just to ensure that the record is clear."  In the same vein, the district court did not use other cases or instances of fault to enhance Grodner's penalty.  It is clear from the record that the district court considered only the *Robinson*-related misrepresentations in deciding to suspend Grodner, even though it mentioned other instances of unprofessionalism in the Order to Show Cause and at the hearing for "context."  Given this record, we cannot say that Grodner's due process rights were violated.

Finally, we address Grodner's arguments concerning the merits of the suspension order.  We agree with the district court that there was clear and convincing evidence of misconduct, *see In re Sealed Appellant*, 194 F.3d at 670, in that Grodner made affirmative misrepresentations while serving as counsel

in *Robinson*.    In terms of the punishment imposed, Grodner's sixty-day suspension is anything but excessive.  Thus, the district court did not abuse its discretion in formulating a proper punishment.

For these reasons, we AFFIRM Grodner's sixty-day suspension from the Middle District of Louisiana.