# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30647

In re: JOSEPH NICHOLAS MOLE,

　　　Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-MC-966

Before BARKSDALE, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:

Attorney Joseph Mole appeals the disciplinary sanction imposed by the en banc court of the Eastern District of Louisiana. The questions presented are whether the en banc court adhered to its own rules and procedures; whether it provided adequate due process; whether its factual findings are supported by the evidence; and whether its chosen sanction was appropriate. Finding no reversible error, we AFFIRM.

I.

Mole represented Lifemark Hospitals in a lawsuit against Liljeberg Enterprises.[1] Then-judge Thomas Porteous presided. Six weeks before the case went to trial, the Liljeberg parties retained Leonard Levenson and Jacob

---

[1] The facts and procedural history of the case are recounted in *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410 (5th Cir. 2002). This appeal is not concerned with the facts of that case, but with Mole's professional conduct during the case.

No. 15-30647

Amato as counsel. Levenson and Amato were widely known to be close friends of Porteous. Mole filed a motion to recuse Porteous based on the appearance of impropriety created by the enrollment of his close friends as counsel for Liljeberg. Porteous denied the motion. Mole then filed a writ of mandamus with this court, which denied it.

Lifemark was concerned that the presence of Levenson and Amato would create an unfair advantage for Liljeberg, so—according to Mole—it insisted that he locate an attorney familiar with Porteous to join the case and help gain equal access to Porteous. Mole eventually identified and hired Don Gardner, a close friend of Porteous. Gardner had no useful experience in the type of litigation pending, and by his own admission, he was hired because Lifemark "wanted to have a pretty face . . . someone who knew the judge." Mole drafted a letter agreement between Lifemark and Gardner setting out the terms of Gardner's compensation. The agreement included an initial retainer fee of $100,000 and—most significantly—an additional $100,000 severance fee "in the event that Judge Porteous withdraws or if the case settles prior to trial."[2]

Porteous did not withdraw, and the case proceeded to a bench trial. Porteous took the case under submission and issued his opinion nearly three years later, overwhelmingly in favor of Liljeberg, and overwhelmingly reversed on appeal by this court. 310 F.3d at 469. This court later issued an Order and Public Reprimand against Porteous "for conduct that included violations of 'several criminal statutes and ethical canons' while presiding over the *Liljeberg* litigation, including his denial of Lifemark's motion to recuse." The same misconduct also led to Porteous's impeachment by Congress in 2010. Mole and Gardner both testified before the Senate about the circumstances of Gardner's

---

[2] An earlier draft of the agreement proposed an initial retainer fee of $50,000 and a severance fee of $150,000.

retention by Lifemark. After Porteous's impeachment, two district judges in the Eastern District of Louisiana filed a disciplinary complaint against attorneys Levenson, Amato, Mole, and Gardner for committing acts "to improperly influence [Porteous] to achieve results that were prejudicial to the administration of justice, including receiving either favorable treatment for their respective clients or a prompt voluntary recusal," in violation of Rules 8.4(d), (e), and (f) of the Louisiana Rules of Professional Conduct.[3]

The Eastern District proceeded under its own Rules for Lawyer Disciplinary Enforcement.[4] First, under Rule 4, the court referred the complaint to the Lawyer Disciplinary Committee. The Committee recommended that the court conduct a hearing. Under Rule 7, the matter was randomly allotted to Judge Helen G. Berrigan to conduct a hearing. After conducting the hearing, Judge Berrigan issued her findings and recommendations to the en banc court. Judge Berrigan found that Mole "diligently represented his client at all times in a manner that is a credit to the profession," and that any misconduct by Mole was, "at most, 'negligent' and time-barred" under the disciplinary rules of the Louisiana Supreme Court. Judge Berrigan recommended that the charges against Mole be dismissed.

The en banc court disagreed. It found that "the clear and convincing evidence introduced at the Senate hearing and before this Court establishes Mr. Mole selected and recommended Mr. Gardner to represent Lifemark because of Mr. Gardner's close friendship with Porteous and with the intent to get Porteous recused," and that "the clear and convincing evidence establishes

---

[3] Under Rule 1.2 of the United States District Court for the Eastern District of Louisiana Rules for Lawyer Disciplinary Enforcement, "[t]he Louisiana Rules of Professional Conduct of the Supreme Court of the State of Louisiana ('Rules of Professional Conduct') apply to all lawyers admitted to practice before this court."

[4] These rules were amended on December 1, 2015. The rules referenced and quoted throughout this opinion are those that were in effect during Mole's disciplinary proceedings.

No. 15-30647

the [$100,000] severance fee in the letter agreement was intended to provide an incentive for Mr. Gardner to achieve this result." The en banc court found that Mole's conduct violated Rules 8.4(d) and (e) of the Louisiana Rules for Professional Conduct and suspended him from practice before the court for one year, with six months deferred. This appeal followed.

## II.

"Sanctions imposed against an attorney by a district court are reviewed for abuse of discretion." *United States v. Brown*, 72 F.3d 25, 28 (5th Cir. 1995). The district court "abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir. 1995). Whether an attorney's conduct is subject to sanction under a specific rule of professional responsibility is a legal issue which this court reviews de novo. *Brown*, 72 F.3d at 28.

## III.

Mole first argues that the Eastern District's rules for disciplinary enforcement do not allow the en banc court to perform a de novo review of the record or to make its own findings. Instead, he contends it is bound by the findings of the allotted judge. Mole's argument is based on his own interpretation of the district court's disciplinary rules, and he does not cite any supporting precedent. Mole contends that because the rules do not explicitly state that the en banc court conducts a de novo review, it is not authorized to do so. Mole's rationale is that an independent review by the en banc court would "render meaningless the three years of litigation, discovery, motion practice, briefing and trial that led to Judge Berrigan's findings." The court's disciplinary committee, as appellee, counters that the rules reserve disciplinary authority to the en banc court, rather than to the allotted judge,

4

and that Mole's construction would transform the allotted judge into the final decision maker.

"When a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure." *In re Thalheim*, 853 F.2d 383, 390 (5th Cir. 1988). We apply "basic principle[s] of statutory construction" to the district court's disciplinary rules. *Id.* at 387. Rule 2 of the Eastern District's Rules for Lawyer Disciplinary Enforcement states that "[t]he court *en banc* may impose discipline upon a lawyer authorized to practice before this court if it finds clear and convincing evidence that . . . [t]he lawyer has committed 'misconduct' as defined in the Louisiana Rules of Professional Conduct." Rule 7.4 states that "[a]t the conclusion of all necessary proceedings, the [allotted] judge must submit written findings and recommendations to the court *en banc* for determination of the disciplinary sanctions, if any, to be imposed." Rule 7.5 states that "[a]fter consideration of the allotted judge's findings and recommendations, the court *en banc* must enter an order either dismissing the complaint or imposing appropriate discipline."

Here, the allotted judge recommended dismissal of the complaint against Mole, but the en banc court disagreed and imposed discipline based on professional misconduct. The en banc court stated that "[a]lthough Judge Berrigan held the evidentiary hearing in this matter, these Findings are based on an independent review of the entire record, including the transcript of the evidentiary hearing, the transcript of the testimony before the Senate, the memoranda of counsel, and the applicable law." The en banc court thus interpreted its own rules to allow it to conduct an independent review of the record and render its own decision. "When the tribunal which has promulgated a rule has interpreted dand applied the rule which it has written, it is hardly for an outside person to say that the author of the rule has misinterpreted it."

No. 15-30647

*In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (quoting *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 783 (9th Cir. 1970)). "We may reverse only where we are convinced that the district court has misconstrued its own rules." *Id.* at 1102.

The en banc court's interpretation is the most rational and logical interpretation available. Rule 2 reserves the power and authority to impose discipline to the en banc court. Rules 7.4 and 7.5 state that the allotted judge's findings and recommendations need only be considered by the en banc court, and that the en banc court determines the sanctions and orders their imposition. If the allotted judge's disciplinary findings and recommendations were binding on the en banc court, then the en banc court would serve no useful purpose, and the rules would state instead that the allotted judge was empowered to render the final disciplinary decision.

Indeed, because the en banc court reserves the authority to impose discipline, its role is analogous to that of the Louisiana Supreme Court. As the Louisiana Supreme Court noted in *In re Nelson*, 146 So. 3d 176, 187 (La.), *reh'g denied* (July 1, 2014), "[b]ar disciplinary matters fall within the original jurisdiction of this court. Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence." (citation omitted). The court went on to state that "we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board." *Id.* Under the same rationale, the Eastern District en banc court is free to conduct an independent review without being bound by the findings and recommendations of the allotted judge. Because Rule 2 reserves disciplinary authority to the en banc court, and because nothing in the rules requires the en banc court to adhere or defer to the findings and recommendations of the allotted judge, we find no error.

6

No. 15-30647

Mole next argues that the en banc court is a "reviewing court" under Federal Rule of Civil Procedure 52(a)(6) and is therefore precluded from conducting a de novo review of the evidence.[5] Mole offers no authority to support his claim that the en banc court, in a disciplinary proceeding, is a reviewing court under Rule 52(a)(6). But "[t]he text of Rule 52(a)(6) limits the rule to instances in which a 'reviewing court' is considering the findings of a 'trial court.'" *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012). Here, Rule 7.5 of the disciplinary procedures states that "[a]fter consideration of the allotted judge's findings and recommendations, the *court en banc must enter an order* either dismissing the complaint or imposing appropriate discipline." (emphasis added). As the en banc court correctly noted, "[t]he orders of the court in disciplinary matters are the orders of the en banc court." Because Rule 52(a)(6) is inapplicable here, Mole's argument fails.

Mole also argues that the en banc court's factual findings are not supported by clear and convincing evidence. Mole's primary theory is that the $100,000 severance fee was not "an attempt to secure the recusal of Porteous and that instead the severance fee was to pay Mr. Gardner enough to 'buy him out of the case' in the event Porteous was no longer the judge because Mr. Gardner's services would no longer be needed." In essence, Mole claims that Gardner's role was to provide insight into Porteous's temperament and thought processes, a role that would be useful only so long as Porteous remained on the case. In support, Mole cites excerpts from his own testimony before the Senate

---

[5] "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

and before Judge Berrigan; Gardner's testimony before the Senate; and the testimony of other witnesses before Judge Berrigan.

In the context of attorney disciplinary proceedings, we have defined the "clear and convincing" evidentiary standard as

> that weight of proof which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case.

*In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (quoting *Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 285 n.11 (1990)). We review the district court's factual findings for clear error. *See Brown*, 72 F.3d at 28 (noting that a district court abuses its discretion by imposing sanctions on the basis of a "clearly erroneous assessment of the evidence").[6] To satisfy the clear error test, the district court's findings must be "plausible in light of the record as a whole." *United States v. Reasor*, 541 F.3d 366, 369 (5th Cir. 2008). "A factual finding is clearly erroneous only if, viewing the evidence in light of the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015) (internal quotation marks omitted).

The en banc court found that Mole hired Gardner to prompt Porteous's recusal after reviewing testimonial evidence derived from both the Senate hearings and Mole's own disciplinary hearing before Judge Berrigan, as well as documentary evidence such as the retention letter between Mole and

---

[6] *Cf. Crowe v. Smith*, 261 F.3d 558, 564–65 (5th Cir. 2001) (conducting de novo review of the record where district court failed to make a finding on critical factual issue); *Medrano*, 956 F.2d at 102 (conducting de novo review of the record where district court incorrectly applied preponderance of evidence standard).

Gardner. The en banc court found the "testimony that the terms of the letter agreement were not drafted in an attempt to secure the recusal of Porteous to be incredible." The en banc court highlighted Mole's testimony before the Senate, where Mole admitted that "getting the judge to recuse himself would be the only way to get a fair outcome"; "getting Judge Porteous to recuse himself was a priority with [him], and one of the things [he] hoped Mr. Gardner's presence in the case . . . would accomplish"; and that he "certainly considered that maybe if [Gardner] got involved . . . Porteous didn't have a legal responsibility to recuse himself because of that but that he might." The en banc court also noted that it "did consider evidence presented at the [hearing before Judge Berrigan], but also gave weight to the sworn testimony before the Senate . . . . given at a time when the witnesses had no personal stake in the outcome." The en banc court thus concluded that, "[t]aken as a whole, the evidence provided clear and convincing evidence that Mr. Mole's intent was to prompt former Judge Porteous's recusal."

Based on all of the above, the en banc court's conclusion is plausible. First, Mole's Senate testimony contains numerous admissions regarding his hope that the retention of Gardner might prompt a recusal. Second, the $100,000 severance fee in the retention letter incentivizes the prospect of a recusal.[7] Although Mole claims that the severance fee was merely intended to "buy out" Gardner, the evidence shows that Gardner never requested such a provision in the agreement. Mole also acknowledged that if Porteous had recused himself immediately upon Gardner's enrollment, Gardner would have received the full $200,000 payment for enrollment and severance, despite not doing any work. This shows that the severance fee was unrelated to any labor

---

[7] Although the severance fee would also be paid in the event of a settlement, Mole acknowledged before Judge Berrigan that the litigation was unlikely to settle and that "recusal would be the most obvious reason for a judge to withdraw from a case."

## No. 15-30647

Gardner may have performed on the case or any opportunity cost he may have incurred in time away from his own practice.  It is therefore plausible that the purpose of the severance fee was to prompt a recusal.

Finally, even if we find Mole's version credible, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Brumfield v. Cain*, 808 F.3d 1041, 1057 (5th Cir. 2015) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. Because the en banc court's determination that Mole hired Gardner to obtain Porteous's recusal is plausible in light of the record as a whole, we cannot set aside that finding.

Mole also argues that he did not engage in misconduct in violation of the Louisiana Rules of Professional Conduct. Mole does not cite any authority in support of his argument. Rather, he simply states in his brief that "nothing [he] did with respect to Gardner had any effect on Porteous' handling or 'administration' of the *Liljeberg* case." We review de novo whether factually established misconduct is subject to sanctions. *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999). Thus, we must determine whether the en banc court's factual findings establish a violation of Rules 8.4(d) and (e) of the Louisiana Rules of Professional Conduct.[8]

---

[8] Louisiana Rule of Professional Conduct 8.4. states:

> It is professional misconduct for a lawyer to . . .
> (d) Engage in conduct that is prejudicial to the administration of justice;
> (e) State or imply an ability to influence improperly a judge, judicial officer, governmental agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

No. 15-30647

We have previously held that "a lawyer may not enter a case for the primary purpose of forcing the presiding judge's recusal." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1265 (5th Cir. 1983). "A lawyer's acceptance of employment solely or primarily for the purpose of disqualifying a judge creates the impression that . . . the lawyer is available for sheer manipulation of the judicial system. . . . To tolerate such gamesmanship would tarnish the concept of impartial justice." *Id.*[9]

Mole did not personally accept employment to disqualify Porteous but instead employed another attorney to achieve the same purpose. A common sense application of *McCuin* shows that this is improper: If a lawyer may not enter a case to force the presiding judge's recusal, then it would be irrational to argue that a lawyer could simply hire *another lawyer* to force the recusal. Thus, we conclude that the action of hiring an attorney to motivate a recusal is prejudicial to the administration of justice and implies an ability to improperly influence a judge in violation of Louisiana Rules of Professional Conduct 8.4(d) and (e).

Mole next argues that he was "effectively twice deprived of his right to be heard." Mole contends that the hearing he appeared in before Judge Berrigan was "rendered meaningless" because the en banc court did not adopt her findings and recommendations. Mole also contends that the en banc court engaged in independent fact-finding without notifying him or giving him a

. . . .

[9] In *McCuin*, we discussed the lawyer's conduct in the context of the ABA Code of Professional Responsibility. *See* 714 F.2d at 1264–65 ("[F]ederal courts have ordered lawyers disqualified in situations involving conduct proscribed by the Code.") The disciplinary rules of Canon 1 forbid a lawyer from engaging in "conduct that is prejudicial to the administration of justice" and the disciplinary rules of Canon 9 forbid a lawyer from implying "that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official." These rules are almost identical to Louisiana Rules of Professional Conduct 8.4(d) and (e).

chance to participate. Yet the en banc court's "independent fact-finding" was nothing more than its review of the *same record* collected by the allotted judge. As with his earlier arguments, Mole does not cite any supporting legal authority. Instead, he simply presumes that he should be entitled to appear twice—once before the allotted judge, and once again before the en banc court. The law does not support this position.

"Disbarment or suspension proceedings are adversarial and quasi-criminal in nature. As such, an attorney is entitled to procedural due process which includes notice and an opportunity to be heard in disbarment or suspension proceedings." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998) (citations omitted). Due process in this context is less than that required by "full criminal procedure" and our precedent "emphatically dismisses such extensive procedural hoop-jumping for the far less serious disciplinary sanctions of suspension and reprimand." *Crowe v. Smith*, 151 F.3d 217, 230 (5th Cir. 1998).

Here, the en banc court followed its own disciplinary procedures according to its Rules for Lawyer Disciplinary Enforcement. Mole received advance notice of the charges against him and had an opportunity to present a defense and to call witnesses before the allotted judge. Mole's argument rests on his presumption that the allotted judge and the en banc court are two separate, independent tribunals. But under Rule 7 of the district court's disciplinary procedures, the allotted judge fulfills a preliminary role by conducting a hearing and then delivering the record of that hearing, along with findings and recommendations, to the en banc court, which is the actual tribunal. Thus, Mole's appearance before the allotted judge satisfied his right to be heard before the en banc court, which then reviewed the entire record, including the earlier hearing. His appearance was not "meaningless" because the en banc court reviewed and considered his defense; it simply rejected it.

No. 15-30647

Furthermore, Mole's demand to appear before both the allotted judge and the en banc court *actually would* render the allotted judge's hearing meaningless because it would require the en banc court to conduct its own evidentiary hearing, with Mole present, before it could impose discipline. Such an approach would result in the very type of "procedural hoop-jumping" that we have previously rejected. *Id.* Because Mole had both notice and an opportunity to be heard before being disciplined, we find that Mole received adequate due process.

Mole also argues that any disciplinary action against him has prescribed under Louisiana law because the alleged misconduct occurred more than sixteen years ago and his actions were, at worst, negligent. Section 31 of Louisiana Supreme Court Rule XIX states that "[a] disciplinary complaint, or the initiation of a disciplinary investigation with regard to allegations of attorney misconduct, where the mental element is merely negligence, shall be subject to a prescriptive period of ten years from the date of the alleged offense." The rule is thus inapplicable where the misconduct is intentional rather than negligent. *See In re Trahant*, 108 So. 3d 67, 75 (La. 2012).

In arguing that his actions were unintentional, Mole resurrects a familiar theme—he states that the evidence is insufficient to support such a finding. Here, the en banc court found that Mole's actions were intentional—a factual finding subject to clear error review. *See Sealed Appellant*, 194 F.3d at 670. Because the en banc court's factual finding of intentional conduct is not clearly erroneous, prescription does not apply.

Mole argues, in the alternative, that any sanction against him should be limited to a private admonition. As before, Mole claims that the en banc court's conclusion that he hired Gardner to secure Porteous's recusal is not supported by clear and convincing evidence. He offers no other argument to explain how the en banc court abused its discretion in imposing a suspension based on its

13

No. 15-30647

earlier factual findings. Having already held that the en banc court's factual findings are not clearly erroneous, we must now consider whether the sanction imposed is appropriate under the established facts.

"A district court's imposition of a particular sanction is reviewed for an abuse of discretion." *Id.* "The question before us is not whether we would [impose the same sanction] but, rather, whether the district court abused its discretion in doing so." *Id.* at 673. "For direction on similar inquiries, the Louisiana Supreme Court has looked to the ABA's Standards for Imposing Lawyer Sanctions." *Id.* (citing *In re Quaid*, 646 So. 2d 343, 350–51 (La. 1994)). Here, the en banc court considered the ABA standards in detail, accounting for both aggravating and mitigating factors. Applying the facts of the case to the applicable standards, the en banc court imposed a one-year suspension with six months deferred. Because the en banc court considered and applied the ABA standards before imposing discipline, and because the sanction imposed is consistent with Louisiana precedent,[10] we hold that the en banc court did not abuse its discretion in imposing its chosen sanction.

## IV.

For the reasons described above, the en banc court's disciplinary order is AFFIRMED.

---

[10] *See, e.g.*, *In re Bolton*, 820 So. 2d 548, 553–54 (La. 2002) (imposing one-year suspension, with six months deferred, where attorney's *negligent* ex parte communications with judge created an appearance of impropriety). Here, the district court found that Mole's actions were intentional—a higher level of culpability than that of the respondent in *Bolton*.

14