**IN RE: Guillermo H. RAMOS,
Appellant**

No. 16-10353

United States Court of Appeals,
Fifth Circuit.

Filed February 14, 2017

Stephen Lyle Tatum, Sr., Allison Paige Carroll, Cantey Hanger, L.L.P., Fort Worth, TX, for Appellant

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM: *

Plaintiff Guillermo H. Ramos, an attorney, appeals an order suspending him from the practice of law in the Northern District of Texas for a period of four years. We conclude that the district court abused its discretion in determining the number of years Ramos should be suspended. We modify the term but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2015, Ramos represented a client in a foreclosure action that was removed to the United States District Court for the Northern District of Texas. On December 2, 2015, the district court ordered the plaintiff to file an amended complaint by December 16, 2015, that complied

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

with the Federal Rules of Civil Procedure, the Local Civil Rules of the Northern District of Texas, and the district court's judge-specific requirements. No amended complaint was filed by the deadline. As a result, the district court dismissed the plaintiff's claims on December 17, 2015.

On January 19, 2016, Ramos moved for reconsideration under Rule 60, asserting that he never received notice either of the district court's December 2015 orders or any other documents filed in the suit until after the case was dismissed. Ramos also filed a memorandum in support of the motion for reconsideration. Ramos's sole argument was that his actions constituted "excusable neglect" because he was unaware that the court's electronic filing system contained an erroneous e-mail address used to provide him notice. Ramos asserted that a request to correct his e-mail address was sent to the Clerk of Court on the same day the district court entered the dismissal order.

In denying the motion for reconsideration, the district court noted the docket sheet reflected that Ramos did indeed receive notice of all the filings in the underlying action as his correct e-mail address was provided by defendants' counsel upon the filing of the notice of removal. Although the district court acknowledged Ramos's main user account e-mail for purposes of CM/ECF notifications was erroneous, it also noted the e-mail associated with the case was his current and correct address. The court also determined it was necessary to "issue a separate order concerning [Ramos's] behavior" in making the representations about notice.

On January 20, 2016, the district court ordered Ramos to show cause why he should not be disciplined under Rule 83.8 of the Local Civil Rules of the Northern

District of Texas. The court concluded "that the majority of [Ramos's] representations in the motion and memorandum are false" regarding his lack of notice. The district court further noted that Ramos's representation implying it was an error by the Clerk of Court to update his main user account, which prevented Ramos from receiving notice, was also false.

The court determined Ramos was in violation of Local Rules 83.8(b)(1) & (3) for engaging in unethical conduct unbecoming a member of the bar.[1] Additionally, the court found his failure to file an amended complaint in the underlying action indicated Ramos's inability to conduct litigation properly. Accordingly, the district court ordered Ramos to show cause why he should not be disciplined, including possible suspension or disbarment, and required that all factual statements in the response be verified by a person having personal knowledge of the facts stated.

Ramos timely filed his Verified Response and stated that he discovered his e-mail address was incorrect when checking the docket in another case on the evening of December 16, 2015. Ramos asserted that, upon this discovery, his employees were instructed to submit a membership update to the Clerk of Court via fax, which included Ramos's correct e-mail address. According to Ramos, the fax was submitted approximately three hours before the district court entered its final judgment dismissing the suit.

In his Verified Response, Ramos admitted he had received the e-mail notifications for the litigation but claimed he only became aware of them after conducting further research of his e-mail account and submitting the correct email address to the clerk's office. Ramos stated he began

---

1. The district court also determined Ramos's conduct was unethical in violation of Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct.

drafting the motion for reconsideration prior to this realization, but due to an undisclosed personal difficulty, he failed to update the motion to reflect his knowledge of the e-mails. Ramos maintained his statements to the court regarding his lack of e-mail notification were not knowing or intentional misrepresentations. He also requested the Chief Judge of the Northern District of Texas convene a three-judge panel pursuant to Local Civil Rule 83.8(h)(3) to make any final determination concerning possible discipline. The district court determined Ramos's Verified Response raised additional concerns for why disciplinary action should be considered and created a separate miscellaneous matter to address this issue.

On February 8, 2016, the district court entered an order in the separate cause setting forth its basis for concern over Ramos's actions. The district court concluded that Ramos's (1) failure to comply with Rule 83.13(b), even if based on his staff's errors, demonstrated his inability to conduct litigation properly, (2) acknowledged lack of receipt of electronic notice also demonstrated his inability to conduct litigation properly, (3) failure to read court e-mails and to file a truthful motion due to distractions in his personal life is unethical conduct that is unbecoming a member of the bar, and (4) request for a three-judge panel to hear any disciplinary action against him was a further indication of Ramos's inability to conduct litigation properly. Although the district court noted Ramos took several mitigating steps,[2] the court found them to be unpersuasive and inferred Ramos's actions were merely used to hide his mistake from his client. Before ruling definitively on the disciplinary action, the district court deemed it appropriate to provide Ramos an additional opportunity to file a written response and to request a hearing before the court.

On February 17, 2016, Ramos filed his latest response with his and his client's declarations attached. Ramos claimed that his errors and omissions in the underlying action were the result of inexperience and poor business practices rather than deceitful or intentional conduct. In his declaration, Ramos noted that he sought the assistance of a solo-practice management expert to review his "client intake, case correspondence, and services-planning protocols to assure errors and lack of oversight and redundancy ... do not occur again." Based on these factors and the fact he fully explained the matter to his client, Ramos argued he lacked "the bad faith element necessary for severe sanctions such as suspension or disbarment...." He also communicated a willingness to attend any CLE or other education programs the court deemed necessary to improve his law practice. Upon review of Ramos's response, the district court determined a further response was necessary before it could determine what disciplinary action to take. The court ordered Ramos to submit his risk-management plan and a statement from the solo-practice management expert describing the nature of his

---

**2.** According to the district court, Ramos's mitigating efforts included: (1) immediately submitting his proper e-mail address upon discovering his main user account address was erroneous; (2) re-filing the underlying plaintiff's state court petition and paying all associated expenses; (3) paying the costs in the underlying action; and (4) correcting his law firm's procedures to prevent this situation from occurring again. The court determined these actions indicated that Ramos "has not informed his client of the dismissal of the underlying case" and that the nondisclosure "constitutes conduct unbecoming a member of the bar and is unethical conduct." Further, the court noted that correcting office procedures is expected behavior.

advice to Ramos no later than March 21, 2016. Both documents were filed under seal.

On March 22, 2016, the district court entered an order suspending Ramos from practicing in the Northern District of Texas for four years. The district court noted its review of Ramos's risk-management plan and other responses confirmed that Ramos "is unable to conduct litigation properly" in violation of Local Civil Rule 83.3(b)(4). Further, the district court found Ramos's "false representations to the court . . . constitutes conduct unbecoming a member of the bar and is unethical conduct." According to the district court, Ramos's actions provided clear and convincing evidence to support the imposition of sanctions against him and no lesser disciplinary action would adequately address his conduct. Rather than imposing disbarment, the court sought to give Ramos "something of a benefit of the doubt by limiting his discipline to" a four-year suspension. Ramos's timely appeal followed.

## DISCUSSION

"We review *de novo* whether an attorney's conduct is subject to sanction." *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999). As "[c]ourts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do," we review any discipline of an attorney for abuse of discretion. *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006). A court abuses its discretion "if the ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *In re: Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016) (quotation marks omitted).

"The question before us is not whether we would [impose the same punishment] but, rather, whether the district court abused its discretion in doing so." *In re*

*Sealed Appellant*, 194 F.3d at 673. When imposing sanctions against an attorney, "a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *Id.* Moreover, given the quasi-criminal nature of an attorney's suspension, "any disciplinary rules used to impose this sanction . . . must be strictly construed resolving ambiguities in favor of the person charged." *United States v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995).

Ramos presents two primary arguments on appeal. First, Ramos argues the district court abused its discretion in imposing a four-year suspension because that penalty is disproportionate to his allegedly unethical conduct. Ramos attempts to distinguish his conduct from that of attorneys for whom we affirmed similar punishments on the basis that his conduct was neither egregious nor willful, which was conduct we previously determined warranted disbarment or a lengthy suspension.

His second argument is that the district court erred by failing to consider mitigating factors and lesser penalties. Specifically, Ramos contends the district court failed to consider the factors we set forth in *In re Sealed Appellant* before determining the proper penalty for this misconduct. Additionally, Ramos argues the district court's imposed punishment runs counter to our precedent that requires the court to "use the least restrictive sanction necessary to deter the inappropriate behavior." *In re First City Bancorporation of Texas Inc.*, 282 F.3d 864, 867 (5th Cir. 2002).

We begin by acknowledging a district court's responsibility to supervise the conduct of attorneys who are admitted to practice before it. *See Crowe v. Smith*, 151 F.3d 217, 230 (5th Cir. 1998). "The court's

control over a lawyer's professional life derives from his relation to the responsibilities of a court." *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). Attorney discipline proceedings afford courts the opportunity to uphold the integrity of the legal profession and protect the public from any attorney misconduct. *See Crowe*, 151 F.3d at 229–30. To ensure district courts temper the exercise of that power with necessary restraint, we "take seriously our responsibility to make a careful review of the fact-finding and the district court's exercise of discretion." *In re Moity*, 320 Fed.Appx. 244, 247 (5th Cir. 2009).

Ramos does not even argue that the district court erred in penalizing him for his conduct in violation of the Local Rules of the Northern District of Texas.[3] The district court explained that clear and convincing evidence supports the conclusion that Ramos engaged in misconduct and displayed an inability to conduct litigation properly. We agree.

Our inquiry does not end there. Having determined that Ramos engaged in conduct for which some penalty was proper, the question becomes whether the district court erred in weighing the evidence when fashioning the penalty. Put another way, did the district court "use the least restrictive sanction necessary to deter the inappropriate behavior"? *See First City*, 282 F.3d at 867. We will apply the factors from *In re Sealed Appellant*[4] in our review.

Several of our recent decisions shed light on our process for assessing the scope of attorney discipline imposed by district courts. In a nonprecedential opinion that we find convincing, we held that a district court acting under its inherent authority abused its discretion when it suspended an attorney from practicing in that district for a period of three years, despite the court's detailed record of the attorney's misrepresentations. *See White v. Reg'l Adjustment Bureau, Inc.*, 641 Fed. Appx. 298, 300 (5th Cir. 2015), *cert. denied sub nom. Radbil v. Reg'l Adjustment Bureau, Inc.*, —— U.S. ——, 136 S.Ct. 2517, 195 L.Ed.2d 843 (2016). We determined the lower court adequately explained its finding of bad faith, which was supported by the requisite clear and convincing evidence. *Id.* at 299. Nevertheless, our prior cases supported that any suspension longer than one year would be an abuse of discretion given the facts in the record. *Id.* at 300.

In another recent unpublished opinion, we affirmed a sixty-day suspension of an attorney who made affirmative misrepresentations to the court on eight occasions that motions she submitted were unopposed. *In re Grodner*, 587 Fed.Appx. 166, 170 (5th Cir. 2014). We agree with the *Grodner* panel that the penalty was "anything but excessive." *Id.* Similarly, we affirmed a one-year suspension for an attorney who "was disciplined for his conduct towards a judicial law clerk during a telephone conversation, for making misrepresentations to the court during a contempt hearing, and for impugning the integrity of two federal judges in a prior brief before

---

**3.** As Ramos's discipline was imposed for a violation of the district court's local rules, there was no requirement for the district court to find that Ramos's conduct constituted bad faith. *See In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016).

**4.** For completeness, we note that in setting forth the factors courts should consider when imposing sanctions, we have cited favorably to the ABA Standard for Imposing Lawyer Sanctions 3.0; it recommends suspensions be for a period not greater than three years. *See In re Sealed Appellant*, 194 F.3d at 673. At least one other circuit has generally adhered to this recommendation. *See In re Aranda*, 789 F.3d 48, 59 n.11 (2d Cir. 2015) (collecting cases).

th[e] court." *Moity*, 320 Fed.Appx. at 244–45. A limit of one year for the penalty in *Moity* appears correct to us.

Quite recently, we affirmed a one-year period of discipline imposed by the judges of the Eastern District of Louisiana. *See In re Mole*, 822 F.3d 798, 800 (5th Cir. 2016). There, an attorney attempted to manipulate the judicial process by hiring co-counsel to force the presiding judge to recuse himself from the case. *Id.* All the judges of that district found the attorney's conduct to have violated several state rules for professional conduct. *Id.* at 801. The court suspended the attorney from practice before the Eastern District of Louisiana for a period of one year, with six months deferred. *Id.* On appeal, we noted that the court took into account any aggravating or mitigating factors and considered and applied the ABA standards, which were adopted in *In re Sealed Appellant*, to fashion its discipline. *Id.* at 807. There was no abuse of the court's "discretion in imposing its chosen sanction." *Id.*

Each of these cases present factual scenarios where attorneys engaged in repetitive acts of misconduct over a lengthy period of time. Such conduct can be labeled egregious under any system of measurement. "The sanction levied must thus be commensurate with the egregiousness of the conduct." *In re Whitley*, 737 F.3d 980, 987 (5th Cir. 2013) (quotation omitted). Courts must consider the duty violated by the attorney and the presence of aggravating or mitigating factors. *In re Sealed Appellant*, 194 F.3d at 673.

The district court abused its discretion in suspending Ramos from practicing in

the Northern District of Texas for as long of a period as four years. Ramos's behavior, although subject to punishment, was not part of a wider pattern of misconduct. Rather, Ramos was a relatively inexperienced lawyer, who sought advice from a solo practitioner expert to remedy his shortcomings, with no prior disciplinary record, and who appeared remorseful.

The district court did not give any weight to these mitigating factors when it concluded that "no lesser disciplinary action would adequately address" Ramos's inappropriate conduct. Beyond this conclusory statement, there is no indication that the district court even considered a lesser penalty than that of a lengthy suspension or disbarment. We certainly agree that lying to the court is an offense worthy of penalty, but the balance of factors set forth in *In re Sealed Appellant* does not weigh in favor of the draconian punishment imposed by the district court.

In most circumstances, we would remand to the district court for reassessment of the conduct in light of our decision, but that is unnecessary today. Based on the factual record before us, we conclude that a one-year suspension is the least severe sanction necessary to deter Ramos from engaging in unethical conduct in the future.[5] Accordingly, we MODIFY the district court's order to reduce the suspension from four years to one year from the date of imposition. As modified, we AFFIRM.

---

5. Although we are reducing the length of his suspension, we urge Ramos and any practicing attorney to be mindful of the fact that personal integrity is essential to the due administration of justice and a fundamental requirement for an officer of the court. *See, e.g., In re Snyder*, 472 U.S. 634, 644–45, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). "It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean." *Hatfield v. King*, 184 U.S. 162, 168, 22 S.Ct. 477, 46 L.Ed. 481 (1902).